Case No. 25-41

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

ARIZONA YAGÉ ASSEMBLY and
WINFIELD SCOTT STANLEY III

Plaintiffs,

TAYLOR COX,
On behalf of himself and others similarly situated,

Intervenor-Plaintiff-Appellant

v.

PAMELA JO BONDI,
Attorney General of the United States, et al.

Defendants-Appellees

---

On Appeal from the United States District Court for the District of Arizona
Case No. CV-20-02373-PHX-ROS
Honorable Roslyn O. Silver

---

**INTERVENOR-APPELLANT'S OPENING BRIEF**

---

Charles Carreon, CSB # 127139
Law Offices of Charles Carreon
7 N. Ridge Crest Circle
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com
*Attorney for Intervenors/Plaintiff/Appellant*

# Contents

I. Jurisdictional Statement ...................................................................... 4

II. Statement of the Issues ..................................................................... 4

III. Pertinent Constitutional and Statutory Provisions ............................. 4

IV. Statement of the Case ...................................................................... 6

IV. Summary of the Argument ............................................................... 11

V. Argument ........................................................................................ 12

  A. Standard of Review ...................................................................... 12

  B. The District Court Erred in Denying Intervention as of Right on the
  Unsupported Grounds that AYA and Stanley Provide Adequate Representation 12

  C.  Plaintiffs are Inadequate Representatives for Intervenors Because the
  District Court Precluded them from Raising Defenses on Behalf of Intervenors 14

  D.  The District Court Mysteriously Found that "Intervenors' Sole Argument"
  was Based on the Fifth Amendment, When They Clearly Plead and Argued
  Three Other Claims ......................................................................... 15

  E.  Plaintiffs are Inadequate Representatives for Intervenors Because
  Intervenors Have an APA Claim that Plaintiffs Cannot Assert ........................... 18

  F.  Plaintiffs are Inadequate Representatives for Intervenors, Because
  Intervenors Have a Fourth Amendment Claim Plaintiffs Cannot Assert ............. 19

  G.  Plaintiffs are Inadequate Representatives for Intervenors Because Under the
  *Perlman* Doctrine, Intervenors May Take an Immediate Interlocutory Appeal
  from an Adverse Discovery Order, a Right that Plaintiffs Do Not Enjoy ........... 21

  H.  Plaintiffs are Inadequate Representatives for Intervenors, Because The
  Intervenors Have Fifth Amendment Protection Against Self-Incrimination that
  Plaintiffs Cannot Assert on Their Behalf .............................................. 22

VI. Conclusion ..................................................................................... 24

**Table of Authorities**

**Cases**

*Abrams v. Blackburne & Sons Realty Capital Corp.*,
No. 2:19-CV-06947-CAS (AS), 2020 U.S. Dist. LEXIS 52089 (C.D. Cal. Mar. 25, 2020) ....................................................................................... 12

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595, 141 S. Ct. 2373 (2021) ............................................. 15

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) ........................................................ 11

*Bd. of Educ. v. U.S. Dep't of Educ.*,
No. 2:16-CV-524, 2016 U.S. Dist. LEXIS 107614 (S.D. Ohio Aug. 15, 2016) ................................................................................................. 11, 12

*Byzantine Catholic Eparchy of Phx. v. Burri Law PA*,
No. CV-20-00779-PHX-ROS, 2022 WL 3597106 (D. Ariz. June 17, 2022) ..... 7

*Carpenter v. United States*,
585 U.S. 296 (2018) ........................................................................ 18

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
603 U.S. 799, 144 S. Ct. 2440 (2024) ............................................. 17

*Grand Jury Subpoena v. Kitzhaber*,
828 F.3d 1083 (9th Cir. 2016) ................................................... 17, 18

*July 21, 2023*,
127 F.4th 139 (9th Cir. 2025) ..................................................... 20, 21

*Ness v. Commissioner*,
954 F.2d 1495 (9th Cir. 1992) ........................................................ 10

*NRDC v. Norton*,
No. 05-16581, 2006 U.S. App. LEXIS 10087 (9th Cir. Apr. 19, 2006) ........... 10

*Perlman v. United States*,
247 U.S. 7 (1918) ........................................................................... 19

*Perry v. Schwarzenegger*,
591 F.3d 1147 (9th Cir. 2010) ........................................................ 15

*Riley v. California*,
    573 U.S. 373 (2014) ........................................................... 18

*Sackett v. EPA*,
    566 U.S. 120 (2012) ........................................................... 17

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ............................................. 11

*United States ex rel.* McGough *v. Covington Techs. Co.*,
    967 F.2d 1391 (9th Cir. 1992) ........................................... 11

*United States v. City of L.A.*,
    288 F.3d 391 (9th Cir. 2002) ............................................. 11

*United States v. Doe Co.*, 966 F.3d 991 *(*9th Cir. 2020*)*
    .................................................................................................. 20

*United States v. Krane*,
    625 F.3d 568 (9th Cir. 2010) ............................................. 19

*Vegetal*,
    546 U.S. 418 (2006) ............................................................. 4

*W. Watersheds Project v. Haaland*,
    22 F.4th 828 (9th Cir. 2022) ............................................. 10

**Statutes**
5 U.S.C. § 702 ........................................................................... 8
28 U.S.C. § 702 ...................................................... 14, 16, 17
28 U.S.C. § 702 to .................................................................. 16
28 U.S.C. § 1291 ....................................................................... 4
28 U.S.C. § 1331 ............................................................... 4, 16
28 U.S.C. §§ 2201-2202 ......................................................... 8
42 U.S.C. § 702 ......................................................................... 9
42 U.S.C. § 2000bb-1 ......................................................... 4, 8

**Rules**
Fed. R. Civ. P. 23 ..................................................................... 7
Fed. R. Civ. P. 24 ............................................................... 4, 10
Rule 24 ..................................................................................... 11

**Other**
U.S. Const. amend. IV ........................................................... 18

## I. JURISDICTIONAL STATEMENT

This appeal arises from the United States District Court for the District of Arizona which had jurisdiction under 28 U.S.C. § 1331. The district court entered its final order denying Taylor Cox's motion to intervene on November 4, 2024. 2-ER-2–13. Appellant filed a timely notice of appeal on December 30, 2024, invoking this Court's jurisdiction under *id.* § 1291. 4-ER-692–693.

## II. STATEMENT OF THE ISSUES

Did the District Court err in denying Intervenors' motion to intervene under Fed. R. Civ. P. 24(a)(2), despite Intervenors' significant protectable interests and the inadequate representation by existing parties?

## III. PERTINENT CONSTITUTIONAL AND STATUTORY PROVISIONS

### First Amendment of the Constitution of the United States

*Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.*

### Fourth Amendment of the Constitution of the United States

*The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.*

### Fifth Amendment of the Constitution of the United States

*No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in*

*cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.*

## 5 U.S.C. § 702 – Right of Review

*A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. * * * Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.*

## F.R.Civ.P. 24(a) -- Intervention as of Right

*(a) Intervention of Right.*

*1.     On timely motion, the court must permit anyone to intervene who:*

*(1) is given an unconditional right to intervene by a federal statute; or*

*(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.*

## IV. STATEMENT OF THE CASE

On May 15, 2021, Plaintiffs Arizona Yage Assembly ("AYA") and Winfield Scott Stanley III ("Stanley") sued the Department of Justice ("DOJ"), the Drug Enforcement Administration ("DEA"), the Department of Homeland Security ("DHS") and Customs and Border Protection ("CBP") (jointly herein "Defendants" and "Defendant-Appellees") under the Religious Freedom Restoration Act ("RFRA") 42 U.S.C. § 2000bb-1. 4-ER-658–688.

Plaintiffs conduct Ayahuasca ceremonies at AYA's ceremonial maloka in the desert east of Tucson, Arizona. The maloka is a traditional circular structure with an altar where Stanley and other AYA facilitators offer Ayahuasca[1] sacramentally to sincere religious practitioners every other weekend. 2-ER-89, 2-ER-193, 2-ER-334; 3-ER-444–445; 4-ER-667. Stanley learned the way of ceremonial Ayahuasca use from Eladio Melendez Garcia, in the jungles of Peru, and began offering ceremonies at the maloka in the spring of 2022. 2-ER-334; 3-ER-418, 3-ER-424, 3-ER-465, 3-ER-530, 3-ER-548, 3-ER-562, 3-ER-566; 4-ER-662–664. The use of Ayahuasca is central to AYA's religious observances, but the path is not for everyone who shows interest. 2-ER-212, 2-ER-281; 3-ER-364–388, 3-ER-438–439, 3-ER-523, 3-ER-558; 4-ER-664, 4-ER-667, 4-ER-676–682. AYA identifies persons whose medical and/or life history contraindicates Ayahuasca consumption, conducts ceremonies that are mindful of the safety of all participants, and nourishes a community of members, many of whom develop and maintain a continuing relationship with AYA. 2-ER-162, 2-ER-274; 3-ER-438–439, 3-ER-523, 3-ER-558.

---

[1] Ayahuasca contains a small amount of dimethyltryptamine (DMT), a Schedule I controlled substance; wherefore the DEA applied a total ban on the importation and sharing of Ayahuasca. See, *Gonzales v. O Centro Espírita Beneficente União do Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

On April 16, 2021, the case was assigned to the Hon. Roslyn O. Silver (Dkt. 93), who ordered the Defendants to answer on May 4, 2023 (1-ER-37–46), and initiated discovery on July 20, 2023 (4-ER-652; Dkt. 195).

The communications network that holds AYA together is email, because applicants for ceremonial attendance submit and receive communications to and from AYA, sharing religious confidences, medical disclosures, and other information. 2-ER-163, 2-ER-257, 2-ER-275, 2-ER-282–289; 3-ER-543–553. This exchange of emails is necessary to offer the ceremony to those who are accepted to attend, by providing them with all the information they need to attend and participate. 2-ER-190–193, 2-ER-334. All written internal communications among Stanley and the facilitators and volunteer participants who assist in presenting ceremony are also conducted via email. 2-ER-190–193, 2-ER-334. All communications with donors and prospective donors are similarly saved in emails. 2-ER-190–193, 2-ER-334. Most of the emails state the identity of the prospective members, members, or donors, and they all demonstrate a reasonable expectation of privacy in email communications by using secret passwords and mechanisms that authenticate their identity before allowing access to the emails. 2-ER-115–118, 2-ER-147–150, 2-ER-163, 2-ER-208. All AYA email communications with members, prospective members, and donors are conducted with the expectation that AYA and Stanley will keep those emails secret. 2-ER-90; 2-ER-275, 2-ER-282, 2-ER-288–289; 3-ER-490, 3-ER-548, 3-ER-552.

The Defendants propounded Interrogatories (3-ER-622) and Requests for Production ("RFPs," 3-ER-608) that contain within them the following fourteen discovery demands, seven Interrogatories, and seven RFPs, all of which target the identities and communications of AYA members, prospective members, and donors.

The District Court entered rulings that precluded the Plaintiffs from asserting the Constitutional rights of the members, proposed members and donors of AYA. 1-ER-14–33; 1-ER-34–36.

On January 22, 2024, the District Court ruled that "Plaintiff AYA may not assert the Fifth Amendment on behalf of its members in responding to Defendants' discovery requests." 1-ER-56.

Defendant-Appellees secured a Discovery Order compelling full production of all documents requested by Defendants in seven (7) Requests for Production ("RFPs").[2] 1-ER-14–33. The cumulative effect of the Discovery Order was to compel Plaintiffs to produce unredacted copies of all emails and attachments sent or received by Plaintiffs to members, prospective members, and donors, without time limitation (thus encompassing a decade worth of AYA emails). 1-ER-14–33. Plaintiffs were further ordered to respond in full to seven (7) Interrogatories that explicitly required the disclosure of every person who ever asked to attend or attended an AYA ceremony during an unlimited time period, and other facts that the Intervenors have a right to prevent Defendant-Appellants from discovering. 1-ER-14–33.

On February 22, 2024, the District Court entered the Discovery Order. 1-ER-14–33. In the Discovery Order, the District Court ruled that a church cannot assert the First Amendment as an objection in discovery, citing its own inapposite decision for that erroneous principle. 1-ER-16. "[T]he First Amendment Free Exercise and Establishment Clauses do not establish any privilege applicable to the civil discovery sought by Defendants." *See Byzantine Catholic Eparchy of Phx. v. Burri Law PA*,

---

[2] The Discovery Order (1-ER-14–33) compels responses to forty discovery demands in total; however, fourteen were particularly offensive to the Constitutional rights of the Intervenors, and thus, are the primary focus here.

No. CV-20-00779-PHX-ROS, 2022 WL 3597106, at *3 (D. Ariz. June 17, 2022). Although AYA and Stanley raised Fourth Amendment privacy objections on behalf of its members, prospective members and donors, the District Court displayed contempt for the notion, citing *Byzantine, supra*, as support for a ruling that the "Fourth Amendment has no bearing on this case, where Plaintiffs object to discovery in a civil lawsuit [against government agencies]," (1-ER-16). The District Court thus fatally misconstrued Plaintiffs' argument, that attempted to assert not the privacy rights of AYA and Stanley, as was the case in *Byzantine*, but rather those of AYA's members and donors.

On March 8, 2024, Plaintiffs petitioned the Ninth Circuit for a writ of mandate, requesting this Court to vacate the Discovery Order. 2-ER-317–347; 3-ER-349-354.

On March 13, 2024, Taylor Cox moved to intervene under Fed. R. Civ. P. 23(a)(2) as class representative of 5,239 AYA members, prospective members and donors (the "Intervenors") seeking to keep private their identities and emails, that the Discovery Order compels AYA and Stanley to disclose on pain of evidentiary and monetary sanctions. *See*, Dkt. Entry 232, 4-ER-721.

On March 15, 2024, the Ninth Circuit stayed the action and directed Defendants to answer. 2-ER-315–316.

On March 20, 2024, the District Court issued a stay (2-ER-314) that remained in effect for six months while the appellate process concluded, and was lifted on November 25, 2024. 2-ER-291–292. (Order Lifting Stay.)

On October 10, 2024, promptly after the District Court lifted the stay, Intervenors filed an Amended Motion to Intervene (2-ER-184–204) supported by a proposed First Amended Complaint in Intervention (the "FACI,'" 2-ER-205–226)

alleging three claims for relief: (1) Judicial Review of Administrative Action under 5 U.S.C. § 702, because the Discovery Order (1-ER-14–33) is a final administrative action that caused Constitutional harm redressable under *id.* § 702; (2) Declaratory Judgment, 28 U.S.C. §§ 2201-2202 seeking a declaration that the Discovery Order (1-ER-14–33) infringes Intervenors' First, Fourth and Fifth Amendment rights; and (3) a RFRA claim under 42 U.S.C. § 2000bb-1 seeking injunctive relief from the Discovery Order on grounds that it substantially burdens Intervenors' free exercise.

Concurrently with Intervenors' filing of the Amended Motion to Intervene, Plaintiffs moved for a stay. 2-ER-248–258.

Both motions were supported by declarations from Cox and two other AYA members attesting to their privacy rights in their identities and email communications, and the injury that would result to the congregation (total implosion) from the disclosure of the identities and emails of the Defendants – the world's three largest law enforcement agencies – thus revealing their involvement with AYA, which Defendants contend violates the Controlled Substances Act by offering ceremonies. 2-ER-259–290.    (Declarations of Stanley, Cox, Hunh and Ziebol.)

On November 4, 2024, the District Court decided Cox's Motion to Intervene and Plaintiffs' Motion for Stay without oral argument in a single, brief ruling that discussed none of the Intervenors' claims for relief, yet concluded that Plaintiffs AYA and Stanley *could* provide adequate representation for the Intervenors, and denied both mandatory and permissive intervention. 2-ER-2–13.

The District Court apparently took no notice of Intervenors' arguments that their Fourth Amendment rights would be impaired by not being allowed to intervene, mysteriously stating "Proposed Intervenors' sole argument that they are not adequately represented is that, in a previous Order, the Court determined 'Plaintiff

10

AYA may not assert the Fifth Amendment on behalf of its members….'" (2-ER-2–13). This remark ignores the presence of the APA claim under 42 U.S.C. § 702, and Intervenors' extensive argument concerning the application of the Fourth Amendment. *See*, Intervenors' argument under the heading "The Fourth Amendment Claims are Viable Under the Holdings of *Carpenter* (SCOTUS), *Kitzhaber* and *Riley* (Ninth Circuit) Because They Have a Reasonable Expectation of Privacy in their PP&I, Including Privileged Religious Communications (*Mockaitis*) in Password Secured Emails." 2-ER-149–150. Perhaps the District Court blinded itself to the Fourth Amendment argument when it ruled that the right to privacy had "no bearing on this case."

On December 30, 2024, Intervenors filed their Notice of Interlocutory Appeal. 4-ER-698–693.

On March 12, 2024, the District Judge recused herself from this action, *sua sponte*. 2-ER-49.

## IV. SUMMARY OF THE ARGUMENT

The District Court's denial of intervention must be reversed because Intervenors met their burden of showing the Plaintiffs could not provide adequate representation of the interests of Intervenors in maintaining the privacy of their identities and email communications with Plaintiffs, because Intervenors' First Amendment Complaint in Intervention alleges claims and avails the Intervenors of remedies that Plaintiffs' Fifth Amendment Complaint does not encompass. Further, the District Court's rulings repeatedly rebuked Plaintiffs for asserting the Constitutional rights of the AYA members, prospective members, and donors, making Plaintiffs' efforts to represent the interests of the Intervenors an exercise in futility, far from any semblance of adequate representation. Finally, as strangers to the litigation whose information is exposed to disclosure by an order entered against

the Plaintiffs, under the *Perlman* doctrine, Intervenors enjoy the right of immediate interlocutory appeal from an adverse discovery ruling, a right that Plaintiffs do not enjoy. Accordingly, for all of these reasons, adequacy of representation was lacking, and it was error to deny Intervenors' motion to intervene.

## V. ARGUMENT

### A. Standard of Review

This Court reviews the denial of a motion to intervene de novo. "The denial of a motion for intervention as a matter of right is reviewed de novo. Thus, we must consider the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered. Consequently, given the standard of review, the district court order, no matter how well-reasoned and well-written, cannot be given deference; we consider the matter independent of the district court's order." *NRDC v. Norton*, No. 05-16581, 2006 U.S. App. LEXIS 10087, at *2-3 (9th Cir. Apr. 19, 2006) (citing *United States v. Alisal Water Corp.*, 370 F.3d 915, 918-19 (9th Cir. 2004)) and *Ness v. Commissioner*, 954 F.2d 1495, 1497 (9th Cir. 1992).

### B. The District Court Erred in Denying Intervention as of Right on the Unsupported Grounds that AYA and Stanley Provide Adequate Representation

Under Fed. R. Civ. P. 24(a)(2), an applicant is entitled to intervene as of right if: (1) the motion is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may impair or impede the applicant's ability to protect that interest; and (4) the existing parties may not adequately represent the applicant's interest. *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022).

This intervention test is "broadly construed in favor of proposed intervenors." *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992); *see Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir.

2001) ("In general, we construe Rule 24(a) liberally in favor of potential intervenors."); *United States v. City of L.A.*, 288 F.3d 391, 397-98 (9th Cir. 2002) ("A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts."). A proposed intervenor's burden on the fourth element is minimal because she need only show "that there is a *potential* for inadequate representation." *Bd. of Educ. v. U.S. Dep't of Educ.*, No. 2:16-CV-524, 2016 U.S. Dist. LEXIS 107614, at *10-11 (S.D. Ohio Aug. 15, 2016)

The Ninth Circuit employs a three-part test to determine the adequacy of representation: (1) whether the interests of the current parties are such that they will raise all of the intervenor's relevant arguments; (2) whether the current parties are capable and willing to make such arguments; and (3) whether the intervenor makes contentions or presents elements of a claim that the other parties would neglect. This standard has been reinforced in cases such as *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), where it was emphasized that the burden of showing inadequate representation is minimal.

In the current case, AYA and Stanley are shown to be inadequate representatives because they do not have standing to raise the specific constitutional claims of Cox and the Intervenors. The court's prior ruling, which stated that AYA could not present the Fifth Amendment claims of the Intervenors and found no First Amendment claim assertable by anyone, additionally underlines the inadequacy of AYA's representation. 1-ER-34–36. This ruling demonstrates that AYA and Stanley cannot fully protect the Intervenors' constitutional rights. 1-ER-2–13. The need for an intervenor to make contentions or present elements of a claim that the other parties would neglect is also evident in the inadequacy of AYA and Stanley's opposition to the Disclosure Order. 1-ER-14–33; 3-ER-411–497. This inadequacy culminated in the issuance of the Disclosure Order in the first instance, thereby

exposing the distinct interests and rights of Cox and similarly situated individuals. 1-ER-14–33.

### C.    Plaintiffs are Inadequate Representatives for Intervenors Because the District Court Precluded them from Raising Defenses on Behalf of Intervenors

The District Court would have known it was compelled to grant intervention if it had analyzed the matter in accordance with the teachings of the well-reasoned body of caselaw providing that intervenors are not adequately represented by existing litigants who lack standing to invoke the same claims for relief and the same remedies as the Intervenor could if allowed to intervene.

In *Bd. of Educ.*, 2016 U.S. Dist. LEXIS 107614, the court found inadequacy of representation and ordered intervention where, even though "Plaintiff and Defendants argue that Defendants are able to represent [an intervenor] more than adequately in their defense of the Title IX claim [nevertheless the intervenors] contend, and Defendants do not dispute, that they will not advance the related claims [and because] a proposed intervenor's burden on this element is minimal … she need only show 'that there is a *potential* for inadequate representation." *Bd. Of Educ. v. United States, id.* at *10-11 (quoting *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999)). *See also Abrams v. Blackburne & Sons Realty Capital Corp.*, No. 2:19-CV-06947-CAS (AS), 2020 U.S. Dist. LEXIS 52089, at *13 (C.D. Cal. Mar. 25, 2020) (proposed intervenor's interest is not represented, for instance, if the intervenor is entitled to damages that the existing parties cannot recover)

Even though the motion to intervene cited the record to show where the District Court in Discovery Order (1-ER-14–33) disregarded every objection ventured by the Plaintiffs on behalf of the absent AYA members and donors – Fifth Amendment, Fourth Amendment and First Amendment -- the Court still found that

Intervenors "have failed to make even a minimal showing that their interests are not adequately represented by Plaintiffs." 1-ER-9.

### D. The District Court Mysteriously Found that "Intervenors' Sole Argument" was Based on the Fifth Amendment, When They Clearly Plead and Argued Three Other Claims

The District Court then proceeded, in the face of a contrary record, to assert that "Intervenors' *sole argument* that they are not adequately represented is that, in a previous Order, the Court determined 'Plaintiff AYA may not assert the Fifth Amendment on behalf of its members….'" (Emphasis added, 1-ER-9).[3] The District Court's statement on this point does not accord with the record. Intervenors' moving papers argue that "Defendants seek to compel the identity of Intervenor Plaintiffs, and to end-run the Fourth Amendment's warrant requirement, and obtain potentially incriminating information by using the civil discovery process as a government search designed to gather information about activity the Defendants currently characterize as illegal." 2-ER-197. A few pages later, Intervenors reminded the District Court when Plaintiffs tried to raise the Constitutional rights of members and donors as discovery objections, the District Court rejected all three objections, under the Fifth, Fourth and First Amendments, as entirely inappropriate. 2-ER-250–252.

Again, taking up the argument in the third section of their brief, Intervenors reiterated their invocation of First, Fourth and Fifth Amendment privileges.

> Promptly upon the entry of the Discovery Order (Dkt.# 220), Intervenor Plaintiffs are seeking intervention to protect the very rights the Court has ruled cannot be adequately represented by AYA and Stanley. Intervenor Plaintiffs have thus acted promptly to

---

[3] Another factual error with considerable prejudicial import appears on the first page of the order denying intervention – the assertion that the case has been "plagued" by discovery disputes for "4.5 years" (52 months). 1-ER-2. However, the case was assigned to the District Judge on April 16, 2021 (Dkt. 93), who opened discovery on July 20, 2023, (4-ER-652) and the Ninth Circuit stayed the action March 15, 2024, (3-ER-314) so discovery was only open for eight months .

address new issues implicating Plaintiff Intervenor's First
Amendment privileges, Fourth Amendment property and privacy
interests, and Fifth Amendment rights to be free of compelled self-
incrimination. Intervenor Plaintiffs are the only persons capable of
defending themselves against the Constitutional injuries that the
disclosure sought by Defendants' Demands will cause to the
Congregation. 2-ER-200.

Challenged by the Defendants on the issue, Intervenors briefed the Fourth
Amendment argument again in their reply, citing controlling Ninth Circuit and
Supreme Court authority establishing that Fourth Amendment protection is accorded
to emails and other digital data. 2-ER-138–155. The District Court's finding that
Intervenors' *sole argument* for representational inadequacy was the Fifth
Amendment claim was mistaken, and the District Court's error on this point was
plainly prejudicial. 1-ER-9. Truncating Intervenors' argument at the Fifth
Amendment and ignoring the other two Constitutional claims, the District Court
order denying intervention failed to address, much less explain, how Plaintiffs could
even present Intervenors' First and Fourth Amendment claims. 1-ER-8–13; 2-ER-
220–223. In fact, they cannot.

In addition to the Constitutional claims uniquely alleged by Intervenors, the
proposed FACI also alleges a 28 U.S.C. § 702 claim that is not alleged in Plaintiffs'
Fifth Amended Complaint (2-ER-213–220) and a RFRA claim alleging that the
Discovery Order itself burdens the free exercise of the Intervenor class members (2-
ER-223–226). In summary, only the Intervenors' FACI contains allegations that
make the Discovery Order itself the cause of cognizable Constitutional injury. Such
allegations are absent from Plaintiffs' Fifth Amended Complaint (4-ER-658–688),
and thus, Plaintiffs cannot pursue such claims on behalf of the absent Intervenors
class members. In summary, the District Court's omission of analysis of the
additional claims alleged by the Intervenors in the FAIC undermines the logic of the

order, making it *per se* reversible for obvious misconstructions of the record in a manner in a manner prejudicial to the Intervenor-Appellants.

The District Court's order denying intervention subordinates all of Intervenors' Constitutional rights to the litigation fortunes of the Plaintiffs. After reversing course on denial of the existence of First Amendment privilege in civil discovery in the Discovery Order (1-ER-14–33), and ordering the Plaintiffs to produce a categorical privilege log asserting associational privacy objections within thirty (30) days, the District Court delivered a threat redolent with finality: "Failure to oblige shall constitute a waiver of the privilege or any objection to discovery, and Plaintiffs will be ordered to fully comply with the Discovery Order at risk of serious sanctions." 1-ER-11–13. This left Intervenors with nothing more than the hope of preserving the privacy of their identities and email communications if (1) Plaintiffs timely produced a privilege log, (2) the Court found the privilege log adequate to raise associational privacy objections, and (3) the Defendants failed to carry their burden under the exacting scrutiny test. 1-ER-12. "[E]xacting scrutiny requires that a government-mandated disclosure regime be narrowly tailored to the government's asserted interest, even if it is not the least restrictive means of achieving that end." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 597, 141 S. Ct. 2373, 2377-78 (2021); *see also Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010).

The fact that Plaintiffs would make sincere efforts to comply with the requirement to produce a privilege log as required by Order Dkt. # 258, and that "Plaintiffs have numerously demonstrated their capability and willingness to make arguments on behalf of their members by claiming 'associational standing to represent the members of its congregation'" should not be allowed to muddy the clarity of the analysis, that turns not on whether Intervenors and Plaintiffs are

separately represented, but rather upon the fact that Intervenors can assert APA and Constitutional claims, and protect their interests as Plaintiffs cannot. 1-ER-10.

Intervenors do not have to establish that an existing party is in conflict with their interests, but rather, simply to make a showing that there is *potential* for inadequate representation. 1-ER-12. The District Court contends that since AYA and Stanley engaged in the futile exercise of presenting objections that were summarily rejected, they are seeking the same relief, when in fact, AYA and Stanley's RFRA claim is entirely directed to securing the lawfulness of their ceremonies. 1-ER-9. The Plaintiffs' Fifth Amended Complaint (4-ER-658–688) does not allege any claim on behalf of AYA's congregation except the right to join in free exercise as an AYA member, and therefore provides no basis to assert the 28 U.S.C. § 702 claim, or the Fifth, Fourth and First Amendment claims of the Intervenors allege. 2-ER-205–226.

### E. Plaintiffs are Inadequate Representatives for Intervenors Because Intervenors Have an APA Claim that Plaintiffs Cannot Assert

Intervenors have a right to sue the Defendant-Appellants under 28 U.S.C. § 702 to request judicial review of the administrative action that began with Defendants propounding disproportionate and irrelevant discovery that clearly invades associational privacy, and culminated in the Discovery Order that violates their Constitutional rights in numerous ways, as alleged in the second claim for Declaratory Relief claim and the third claim for RFRA violations. 2-ER-205–226. As alleged in the FACI, the DEA, much less the other Defendants, have no jurisdiction to inquire into the identity of AYA members and donors, and to conduct raids into the private records of the church, its members and donors, simply because their church is in litigation with the federal government. 2-ER-219.

*Sackett v. EPA*, 566 U.S. 120 (2012), the scope of an administrative agency's jurisdiction is confined to that specified by Congress in enabling legislation. Further,

it is absolutely clear that the Intervenors' 28 U.S.C. § 702 claim accrued when the Discovery Order (1-ER-14–33) issued on February 22, 2024. *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 144 S. Ct. 2440 (2024) (Section 702 claim accrues under 28 U.S.C. § 2401(a) when plaintiff is injured by final agency action). Intervenors have alleged the 28 U.S.C. § 702 claim (2-ER-213–220), while by contrast, the Plaintiffs saw their 28 U.S.C. § 702 claim dismissed along with the entire Fourth Amended Complaint. *See*, Dkt. Entry 153, 4-ER-715. Intervenors have a 28 U.S.C. § 702 claim that Plaintiffs have not raised (2-ER-213–220), and since this fact was not considered by the District Court, it failed to properly analyze the adequacy factor, and erroneously found Plaintiffs' representation adequate. 1-ER-2–13. Intervenors met their minimal burden of showing Plaintiffs' inadequacy with this one issue, that the District Court entirely overlooked.

## F. Plaintiffs are Inadequate Representatives for Intervenors, Because Intervenors Have a Fourth Amendment Claim Plaintiffs Cannot Assert

Intervenors submitted evidence that the class members have a substantial and legally protectable Fourth Amendment privacy interest in their identities, private email addresses, email communications, telephone numbers, and other personal data. 2-ER-259–290. (Cox Dec., ¶26, 27.)Intervenors cited case law in their reply brief, *Grand Jury Subpoena v. Kitzhaber*, 828 F.3d 1083, 1086 (9th Cir. 2016), holding emails to be property and digital papers that contain intimate details of our lives and are expected to be kept private, a standard that society recognizes as reasonable (2-ER-147). Emails are treated like physical mail when determining whether an individual has a reasonable expectation of privacy in its content. *Id.* at 1090. These interests are protected under the Fourth Amendment, which guards against unreasonable searches and seizures, and this protection extends to digital records. (U.S. Const. amend. IV.) The Intervenors' expectation of privacy is

evidenced by their habitual use of secret passwords and two-factor authentication systems to secure their communications devices and media contents. 2-ER-259–290.

To similar effect, in *Carpenter v. United States*, 585 U.S. 296 (2018), the Supreme Court held that the government performs a search under the Fourth Amendment, requiring a warrant supported by probable cause, when it accesses historical cell phone location records, because individuals have a reasonable expectation of privacy in their physical movements as captured through cell phone location data, even though that information is obtained from a third party. *Id.* at 313.

The Supreme Court has also recognized that Fourth Amendment privacy law must adapt to keep pace with technological advances that make it easy for authorities to acquire digital troves that contain "the sum of an individual's private life," "a digital record of nearly every aspect of their lives," information that "could reveal an individual's private interests or concerns" and "location information…that can reconstruct someone's specific movements down to the minute." *Riley v. California*, 573 U.S. 373, 393-95 (2014). Email now contains all the information once found in the "papers and effects" the Framers mentioned explicitly in the Fourth Amendment. *Grand Jury Subpoena*, 828 F.3d at 1090. The content of email is presumed to be read only by the  intended recipient and even though the form is digital, there is a reasonable expectation of privacy in one's email. *Id.*

The order denying intervention (1-ER-2–13) also *sua sponte* directed Plaintiffs to provide a categorical privilege log of associational privilege claims, and upon the District Court's judgment of the adequacy of that privilege log hang all the Intervenors' hopes of protecting their Fourth Amendment privacy. This level of representation, that subordinates the Constitutional rights of the Intervenors to the litigation fortunes of AYA and Stanley, is clearly inadequate, especially when Intervenors stand ready to more effectively and directly defend their own rights.

**G.    Plaintiffs are Inadequate Representatives for Intervenors Because Under the *Perlman* Doctrine, Intervenors May Take an Immediate Interlocutory Appeal from an Adverse Discovery Order, a Right that Plaintiffs Do Not Enjoy**

If Intervenors were to find no success with their APA and Constitutional claims in the District Court, under the doctrine enunciated in *Perlman v. United States*, 247 U.S. 7 (1918) Intervenors would be entitled to take an immediate interlocutory appeal of a discovery order compelling AYA and Stanley to produce Intervenors' privileged documents. The nature of the relationship between the intervening third party and the original party subject to the disclosure order often involves attorneys. For instance, in  *United States v. Krane*, 625 F.3d 568 (9th Cir. 2010), the court recognized that a discovery order directed at a disinterested third-party custodian of privileged documents is immediately appealable because the third party, presumably lacking a sufficient stake in the proceeding, would most likely produce the documents rather than submit to a contempt citation  *Krane*, 625 F.3d 568.  The "*Perlman* rule applies only when the privilege holder is "powerless to avert the mischief of 'a district court's discovery order because the materials in question are held by a disinterested third party.'" *Id.* at 573.

AYA serves as the custodian of its members' sensitive information. 3-ER-357–360. The District Court's order places AYA in a position where compliance would violate the privacy and associational rights of its members, while non-compliance could subject it to contempt sanctions. 1-ER-12. Given this predicament, AYA has a strong incentive to find a way to comply with the Discovery Order, that threatens both monetary and issue sanctions, rendering Intervenors powerless to prevent the disclosure of their identities and affiliations. Without immediate appellate intervention, the compelled disclosure would cause irreparable harm by infringing upon the members' Constitutional rights, as argued in detail hereinabove. 3-ER-357–360.

In *United States v. Doe Co.* (*In re Grand Jury Investigation*), 966 F.3d 991 (9th Cir. 2020) (In re Grand Jury Investigation), the Ninth Circuit reiterated that the *Perlman* rule applies when the third party cannot be expected to risk contempt to protect the privilege holder's interests. The court noted that the vast majority of *Perlman* cases involve orders issued to attorneys seeking information protected by the attorney-client privilege. *Id.*. Similarly, in *In re Grand Jury Subpoena, dated July 21, 2023*, 127 F.4th 139 (9th Cir. 2025), the court allowed an immediate appeal where a law firm, which had previously represented the client, was subpoenaed for documents related to that representation. *Id.* at 142.

Therefore, under the *Perlman* doctrine, if they fail to persuade the District Court to protect their Constitutional rights from exposure of identities and private email communications, the Intervenors would have the uniquely valuable right to seek review of the unfavorable order. Plaintiffs could not obtain interlocutory review of discovery orders, because the *Perlman* doctrine is assertable only by strangers to the original litigation, and thus, Plaintiffs' representation of the Intervenors is inadequate. 2-ER-126–127, 2-ER-133–134, 2-ER-291–292.

### H.    Plaintiffs are Inadequate Representatives for Intervenors, Because The Intervenors Have Fifth Amendment Protection Against Self-Incrimination that Plaintiffs Cannot Assert on Their Behalf

The Fifth Amendment protects individuals from being compelled to provide testimonial evidence that could be used against them in criminal proceedings, and they may seek to enforce a Fifth Amendment privilege in litigation through intervention. *Id.* at 142.

Forcing the disclosure of membership lists and related personal communications exposes AYA members to the risk of criminal prosecution for their participation in activities involving a Schedule I substance. 2-ER-151–154, 2-ER-197, 2-ER-203, 2-ER-222–224. This exposure violates the core principle that no

person should be compelled to incriminate themselves, and Intervenors are entitled to defend themselves from such Constitutional violations by intervening in an action where, in their absence, their interest in not being incriminated by their own emails may be compromised. 3-ER-459, 3-ER-466, 3-ER-544, 3-ER-548, 3-ER-550, 3-ER-552. The District Court ruled, however, that the Plaintiffs cannot raise the argument on behalf of AYA's members and donors (1-ER-34–46); accordingly, Intervenors must raise it themselves, and must be allowed to intervene to do so.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## VI. CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court reverse the district court's denial of the motion to intervene and issue a mandate directing the District Court to grant the motion to intervene.

Respectfully submitted,

/s/Charles H. Carreon
  CHARLES H. CARREON
  *Counsel of Record*
  Charles Carreon, Attorney at Law
  7 N. Ridge Crest Circle
  Silver City, New Mexico 88061

March 27, 2025